**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

**DIANA BEST,**

                **Plaintiff,**

    v.

**PROSPECT 446 LLC, BRONSTEIN PROPERTIES LLC, ALBERT BRONSTEIN, DANIEL INTERDONATI, JOSEPH MASINO, BARRY RUDOFSKY, AND SCOTT SILVERMAN.**

                **Defendants.**

**COMPLAINT
Docket No. 22-CV-3347**

## PRELIMINARY STATEMENT

1. Diana Best (hereinafter "Plaintiff" or "Ms. Best") is a 71-year-old disabled woman who has resided at 446 Ocean Avenue in Brooklyn (hereinafter "the building") for almost 20 years. The plaintiff has no mobility in either of her knees and, for the last decade, has needed to use a wheelchair for all ambulation.

2. The building has two public entrances, and each entrance has two sets of steps to access the building. Because there are no ramps or lifts at the building entrances, it is not accessible to someone like Ms. Best who uses a wheelchair.

3. In 2016, after learning that she could request a modification at her building, Plaintiff provided Defendants with medical documentation of her need to use a wheelchair and requested a modification so that she could enter and exit the building. Defendants have been unwilling to provide any modifications to either of the building's entrances.

4. The Plaintiff is effectively locked in her apartment and can leave her home only with great difficulty. To do so, she must wheel herself from her apartment door to the first set of interior steps, fold-up her chair and scoot down the stairs, pulling her folded chair behind her. At the bottom of the stairs, she pulls herself back into her chair, and then waits for any passerby to help wheel her down the outside steps. To return, she must find two people to help carry her and her chair back over both sets of the stairs.

5. Plaintiff has been forced to severely curtail her social interactions, medical visits, and her formerly robust participation in religious and communal events at her church.

6. The Plaintiff brings this action against the corporate and individual owners and managers of the building asserting claims under the Fair Housing Amendments Act, 42 U.S.C. § 3601 et seq., New York Executive Law § 290 et seq. ("New York State Human Rights Law/NYSHRL"), and the Administrative Code of the City of New York § 8-101 et seq. ("New York City Human Rights Law/NYCHRL"). She seeks declaratory relief, an injunction compelling Defendants to enable her to enter and exit the building, and damages.

## JURISDICTION AND VENUE

7. This action arises under the laws of the United States conferring subject matter jurisdiction on this Court pursuant to 28 U.S.C. § 1331. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state law claims that are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper before this Court based on 28 U.S.C. § 1391(b)(1) because all Defendants reside within this Judicial District. Venue is also proper based on 28 U.S.C. §

1391(b)(2) since a substantial part of the events giving rise to the within causes of action including the unlawful discriminatory practices alleged herein, occurred in this Judicial District and the property that is the subject of the within causes of action is located in this Judicial District.

## PARTIES

9. Diana Best (hereinafter "Plaintiff" or "Ms. Best") is a 71-year-old rent-stabilized tenant who has resided in Apartment 1J at the building for almost twenty years. Due to her disability, she uses a wheelchair for all ambulation.

10. Defendant Bronstein Properties LLC ("Bronstein Properties") owns and/or operates the building. Defendant Bronstein Properties' address for services of process is 108-18 Queens Boulevard, Suite 302, Forest Hills, N.Y. According to its website, Defendant Bronstein Properties owns and manages 1200 properties and 6500 apartments in Manhattan, Brooklyn, Queens, Westchester, and Long Island.

11. Defendant Prospect 446 LLC ("Prospect 446") is a limited liability company registered and authorized to do business in the State of New York. Defendant Prospect 446 owns and/or operates the building. Defendant Prospect 446's address is c/o Bronstein Properties LLC, 108-18 Queens Boulevard, Suite 302, Forest Hills, N.Y.

12. Upon information and belief, Defendants Albert Bronstein, Barry Rudofsky, Joseph Masino, and Scott Silverman own, operate, and/or manage the building, and use the business address of c/o Bronstein Properties LLC, 108-18, Queens Boulevard, Suite 302, Forest Hills, N.Y.

13. Upon information and belief, Defendant Daniel Interdonati is the property manager of the building. Defendant Interdonati's address for service of process is c/o Bronstein

3

Properties LLC, 108-18, Queens Boulevard, Suite 302, Forest Hills, N.Y. Hereinafter, all defendants will be referred to collectively as "Defendants."

## STATEMENT OF FACTS

14. Plaintiff Diana Best moved into Apartment 1J (the "apartment") in the building in approximately 2003. She has a rent-stabilized lease with Bronstein Properties LLC.

15. Upon information and belief, the building has 47 apartments arranged around a public courtyard. The building, 446 Ocean Avenue, is accessible from a main entrance on Ocean Avenue and a side entrance on Caton Avenue.

16. To access the building from the main entrance on Ocean Avenue, one must negotiate one short step through the building's main gate and three steps into the courtyard. There are then several steps to enter the building from the courtyard. There are no ramps or lifts, so the building is not accessible by a person using a wheelchair from this main entrance.

17. To access the building from the Caton Avenue entrance, one must ascend two steps leading up to the building door and then four steps inside to get to Ms. Best's first floor apartment. This entrance also is not accessible to a person who uses a wheelchair.

18. For many years, Ms. Best had an active social life with friends and family. She was very involved in the life of her church and attended Sunday services and other weekly communal events. Weather permitting, she spent time in the courtyard or in a local park where she often met friends.

19. After years working at a factory, Ms. Best worked for over two decades as an office cleaner in Manhattan. By approximately 2008, after years of bending, kneeling and stair-climbing in her jobs, and a traumatic injury to her left knee that may have exacerbated

4

her condition, she had so much pain and discomfort that she needed reparative knee surgery and months of rehabilitation.

20. She was no longer able to work and began receiving Social Security Disability benefits.

21. By 2011 or 2012, Ms. Best needed surgery in her right knee. Despite five more knee surgeries and rehabilitation, Ms. Best is unable to stand or walk.

22. For the last decade, Ms. Best has used a wheelchair for mobility inside and outside her apartment. She has part-time household assistance from a home attendant three days each week.

23. Since she has been using a wheelchair, Ms. Best has struggled to get in and out of her building. Using the Caton Avenue exit, Ms. Best wheels her wheelchair from her apartment to the inside steps, folds her wheelchair, scoots down the four steps on her behind pulling the closed wheelchair with her. At the bottom of the steps, she opens the wheelchair, and, though it is physically taxing, pulls herself up into the chair. Then she opens the entrance door. Once outside she waits to find a person—often a stranger—to roll her down the outside steps. When she returns to the building, Ms. Best waits outside the entrance to find two people who can help lift her and her wheelchair up the steps so she can get to her apartment.

24. For several years, when they were not working and had no other family or personal obligations, Ms. Best's son or grandson would try to help her either in or out of the building. Both Ms. Best's son and grandson have had physical injuries that now prevent them from providing even this limited assistance.

25. Despite these difficulties, Ms. Best tries her best to go to church on Sundays. She uses access-a-ride to drive her. The access-a-ride drivers, however, only pick-up and drop-off

passengers at the curb and do not assist passengers with the stairs at their buildings. During the pandemic, Ms. Best was able to attend her church services on Zoom. These zoom services have ended and are now in person.

26. For many years, Ms. Best was unaware that she could ask for a building modification. In early 2016, a woman at her church recommended that she contact the New York City Commission on Human Rights ("NYCCHR" or "Commission") to see if they could help.

**Plaintiff's New York City Commission on Human Rights Complaint**

27. In March 2016, Plaintiff contacted the NYCCHR about her situation and her inability to regularly leave her apartment. A Commission Investigator attempted to assist Plaintiff through the Commission's Project Equal Access.

28. They recommended that Plaintiff provide her landlord with medical documentation of her need to use a wheelchair and request the modifications she needed in her apartment bathroom and at the building entrance. She submitted this documentation and request to Defendants in April 2016.

29. In a letter dated March 8, 2017, almost one year later, Defendant Interdonati sent the Commission Investigator a one-page letter originally from JAJ Engineering to Bronstein Properties, stating that "we find no reasonable methods, of which are typically used, to make the needed accommodations for the required access." JAJ Engineering did not assess the Caton Avenue side entrance in this letter.

30. On or about September 29, 2017, the Commission Investigator sent a letter informing Defendant Interdonati that the Commission took the position that modifications to the building were feasible and requesting that JAJ Engineering assess all entrances to the

building. The Commission Investigator also conveyed the Plaintiff's urgent need for grab bars in her bathroom.

31. On or about October 18, 2017, Defendant Masino emailed a one-page letter to the Commission Investigator containing a letter from JAJ Engineering dated October 5, 2017, which again stated "we...have found no practical path to install the typical means and methods of accomplishing this...accommodation."

32. In November 2017, Defendants installed grab bars in Plaintiff's bathroom.

33. On or about November 28, 2017, the Commission Investigator called Defendant Interdonati regarding other options to enable Plaintiff to access the building. Defendant Interdonati stated that he disagreed with the Investigator's belief that a folding chair lift would be feasible at the building. At no point during this investigation did any of the Defendants provide Plaintiff or the Commission with blueprints, a formal expert report or other documents showing why a modification could not be provided.

34. On or about April 4, 2018, the Commission filed an administrative complaint on Ms. Best's behalf asserting that Defendants have discriminated against her by failing to reasonably accommodate her disability in violation of § 8-107(15)(a) of the Administrative Code of the City of New York.

35. Upon information and belief, the Investigator working on this matter left the Commission and it languished in the administrative process.

36. On December 29, 2020, the Commission's Law Enforcement Bureau closed Plaintiff's case for administrative cause and stated that the Bureau "has not made a determination either way as to the merits of the complaint."

**Plaintiff's Irreparable Harm**

37. Plaintiff must use a difficult, painful, and humiliating process to leave her apartment. She also now has shoulder pain that makes it extremely difficult to get herself out of her wheelchair and back in when she scoots herself down the interior steps.

38. This process is also dangerous. Plaintiff has fallen during this process of trying to exit the building.

39. Currently, there is no family member who can assist Plaintiff in leaving or entering the building.

40. As a result of the lack of wheelchair accessible entrances at the building, Plaintiff is essentially trapped in her apartment. She is completely reliant on others to buy food and necessities.

41. In addition, it is now almost impossible for Ms. Best to leave her apartment to visit friends and family, go to the local park, attend weekday church events, shop, or go to the salon as she had loved to do when she had been able to walk up and down the entrance steps at her building.

42. Further, Ms. Best must live with the reality that she could be trapped in her apartment in an emergency. In 2017, there was a fire in the apartment immediately above Ms. Best's. Her grandson happened to be home and helped her leave the building, along with the other tenants. Now, even if her grandson were home at the time of a future emergency, he could provide the most limited assistance due to his own physical injury.

**Architect's Assessment of the Accessibility Options**

43. On May 10, 2022, Architect Steven Zalben visited the building to assess accessibility options that would enable Ms. Best to enter and exit her building. He found reasonable

and feasible options for providing access through both the main Ocean Avenue entrance and the Caton Avenue entrance.

44. Caton Avenue Access: Mr. Zalben proposes a series of ramps beginning at the sidewalk and extending to the floor level of the hallway outside Ms. Best's apartment. This project would also require installing a newly located entrance door. He estimates that this work could be completed at an approximate cost of $17,500.

45. Ocean Avenue Access into the courtyard: There are two components of Zalben's proposal for access through the Ocean Avenue entrance—access from the sidewalk through the arcade entrance to the courtyard, and access from the courtyard to the level of Ms. Best's apartment.

46. The courtyard can be accessed from the sidewalk with the installation of a ramp. This could be accomplished at an estimated cost of $10,000. Making this entrance accessible would benefit all tenants in the building—those with disabilities and those without.

47. To access Ms. Best's apartment from the courtyard, Mr. Zalben proposes two alternatives.

    a. Chair lift into Ms. Best's window: Access could be provided by converting the apartment window overlooking the courtyard to a door and installing a chair lift at an estimated cost of $8500.

    b. Ramp access into Ms. Best's building: Ms. Best could get access into the building hallway through a series of ramps in the courtyard that extended past the steps into Ms. Best's apartment. This work could be done at an estimated cost of $30,000. This option has the benefit of providing access to other first floor apartments in the building should other tenants need this access in the future.

9

48. As contemplated by the NYCCHR personnel, there may be additional reasonable modifications that could provide Ms. Best with access to her apartment.

### FIRST CAUSE OF ACTION

**(42 U.S.C. § 3601 et seq. – Discrimination under the Fair Housing Amendments Act)**

49. The FHAA prohibits discriminatory housing practices including the failure to provide a person with a disability an equal opportunity to use or enjoy a dwelling. 42 U.S.C. § 3604(f)(2).

50. The subject building is a "covered dwelling" within the meaning of the FHAA as it is a building, structure, or portion thereof which is occupied as a residence by one or more families. 42 U.S.C. § 3602(b) (McKinney 2022).

51. Defendants are subject to the FHAA because they have the right to sell the building or rent its apartments. 42 U.S.C. § 3603©.

52. Plaintiff is a person with a "handicap" protected by the FHAA as she has a physical impairment that substantially limits her major life activity of walking. 42 U.S.C. § 3602(h).

53. Plaintiff requested reasonable modifications to enable her to access her building and apartment. Defendants refused that request.

54. Defendants therefore failed to provide the Plaintiff with the modifications necessary to afford her an equal opportunity to use and enjoy her dwelling in violation of the FHAA. 42 U.S.C. § 3604(f)(3)(A) and (B).

55. As a result of Defendants' actions Plaintiff has suffered grievous harm entitling her to declaratory and injunctive relief, compensatory damages, including emotional distress and mental anguish, and attorney's fees and costs. 42 U.S.C. § 3613©(1) and (2).

## **SECOND CAUSE OF ACTION**

### **(New York Exec. Law §296- Discrimination under NYSHRL)**

56. As owners, lessors, sublessors, managing agents or other persons having the right to sell, rent, or lease a housing accommodation, Defendants are subject to the requirements of the NYSHRL. N.Y. Exec Law § 296(5)(a)(2) and (18).

57. The building is subject to the NYSHRL's requirements because it is used or occupied as the home, residence, or sleeping place of one or more persons. N.Y. Exec Law § 292(10).

58. At all relevant times Plaintiff has had a "disability" within the meaning of NYSHRL because Plaintiff has a physical impairment "which prevents the exercise of a normal bodily function." N.Y. Exec. Law § 292(21) (McKinney 2022).

59. Plaintiff requested that Defendants remove the architectural barriers that prevent her from accessing the common use areas of her building. Defendants' failure to make reasonable modification to the common use areas of the building denies Plaintiff the equal opportunity to use and enjoy the dwelling in violation of N.Y. Exec. Law § 296(18)(2).

60. By failing and refusing to provide Plaintiff with access to her building, Defendants discriminate against Plaintiff in the terms, conditions or privileges of the rental or lease of her housing accommodation based on her disability in violation of N.Y. Exec. Law § 296(5)(a)(2).

61. Plaintiff has suffered damages, including damages stemming from emotional distress from her inability to leave her apartment regularly, safely, and painlessly.

62. As a result of the Defendants' acts of discrimination, Plaintiff is entitled to declaratory and injunctive relief, compensatory damages, and attorney's fees and costs pursuant to NY Exec Law § § 297(9) and (10).

## **THIRD CAUSE OF ACTION**

### **(New York City Administrative Code § 8-102 et seq. – Discrimination Under NYCHRL)**

63. Defendants are covered by the obligations of the NYCHRL because they own, lease, or manage a housing accommodation. N.Y.C. Admin. Code §§ 8-102 (1), (17); 8-107(5)(a).

64. The building is a housing accommodation covered by the NYCHRL because it is used or occupied as the "home, residence or sleeping place" of one or more people. N.Y.C. Admin. Code § 8-102 (10).

65. At all relevant times, Plaintiff has been an individual with a disability within the meaning of NYCHRL, and subject to its protections. N.Y.C. Admin. Code § 8-102(16).

66. Plaintiff is entitled to reasonable accommodations to access her building, including reasonable modifications to enable her to access her building's entrances. N.Y.C. Admin. Code § 8-107(5)(a) and (15).

67. Plaintiff requested reasonable accommodations at the building and Defendants refused to make accommodations or engage in cooperative dialogue with Plaintiff about alternatives. N.Y.C. Admin. Code § 8-107(28)©.

68. Plaintiff's requests for a wheelchair ramp and/or chair lift and/or other modifications constitute a "reasonable accommodation" that would not cause Defendants "undue hardship." N.Y.C. Admin Code § 8-102 (18).

69. Defendants' failure to make reasonable accommodations to enable Plaintiff to access her apartment amounts to disability-based discrimination against in violation of the NYCHRL. N.Y.C. Admin Code § 8-107(5)(a)(2) and (15).

70. As a result of this discrimination, Plaintiff has suffered substantial damages, including substantial emotional distress, in an amount to be determined at trial.

71. As a result of Defendant's discriminatory actions against Plaintiff, Plaintiff is entitled to injunctive relief, damages, and attorney's fees and costs under the NYCHRL. N.Y.C. Admin Code § 8-502.

WHEREFORE, Plaintiff respectfully requests that this Court issue a final judgment:

1. Declaring that Defendants have violated the prohibitions against disability-based discrimination in the FHAA, NYSHRL, and NYCHRL;

2. Granting a preliminary and permanent injunction compelling Defendants to make modifications needed to reasonably accommodate Plaintiff's disability so that she can use and enjoy the dwelling unit that she occupies at the building;

3. Awarding compensatory damages in an amount to be determined at trial against all Defendants, along with interest on all amounts due under law;

4. Awarding Plaintiff's costs of this action, together with reasonable attorney's fees; and

5. Granting such other and further relief as this Court may deem just and proper.

Dated: June 2, 2022
New York, New York

*Leslie Salzman*
Leslie Salzman
Hannah Petitti, Kim Wroblewski, Legal Interns
Cardozo Bet Tzedek Legal Services
55 Fifth Avenue, 11th Floor
New York, New York 10003
salzman@yu.edu
Phone: (646) 592-6570
Fax: (212) 790-0256


JASA/ Legal Services for Elder Justice
Donna Dougherty, Attorney in Charge
Kristen Vrancken
97-77 Queens Boulevard Suite 600

13

Rego Park, New York 11374  
ddoughterty@jasa.org  
Kvrancken@jasa.org  
(718) 286-1500  

Attorneys for Plaintiff